(No. 15850.—Judgment affirmed.)

THE CITY OF WINCHESTER, Appellee, *vs.* WILLIAM H. RING, Appellant.

*Opinion filed April 14, 1924—Rehearing denied June 11, 1924.*

1. EMINENT DOMAIN—*when the Supreme Court will not disturb finding of jury as to value of land taken.* Where the jury in a condemnation proceeding, besides seeing and hearing the witnesses testify, have a personal view of the premises, their finding as to the value of the land taken, if within the scope of the testimony, will not be disturbed by the Supreme Court unless clearly against the weight of the evidence.

2. SAME—*when party may be compensated for injury to right of user or enjoyment.* Under the constitutional provision that property cannot be taken "or damaged" without just compensation, it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which by the common law would, in the absence of any constitutional or statutory provision, give a right of action, but the constitutional provision was not intended to reach every possible injury that may be occasioned by a public improvement.

3. SAME—*property not taken cannot be compensated for injury amounting only to inconvenience.* Property not taken cannot be compensated for an injury which amounts only to an inconvenience or discomfort to the occupants of the property and does not affect its value, even though a personal action may lie, but the injury complained of must be actual, susceptible of proof and capable of being approximately measured, and must not be speculative, remote, prospective or contingent.

4. SAME—*injury to property not taken must be different from that sustained by general public.* To warrant recovery of damages to property not taken the damage must be different in kind from that sustained by the people of the whole neighborhood, and if it differs only in degree from that suffered in common by others the injury is not within the constitutional provision.

5. SAME—*when damages to property not taken for cemetery purposes cannot be awarded.* In a condemnation proceeding by a city to take property for a cemetery site, property not taken is not damaged by the location of the cemetery, within the meaning of the constitutional provision for damages to property not taken, where the injury is only to the feelings of the owner and

is not different in kind from that sustained by others residing in the neighborhood.

6. SAME—*when petition of a city for condemnation makes sufficient reference to petitioner's authority to condemn.* The provision of section 2 of the Eminent Domain act requiring that the petition for condemnation set forth, "by reference," the authority of the petitioner, means the authority vested by law in the corporation seeking condemnation, and the petition of a city need not refer to the resolution of the corporate authorities but is sufficient if it refers to the act of the legislature granting the power.

7. SAME—*resolution of city authorizing condemnation may be presumed.* Where the petition of a city for condemnation refers to statutory authority, it will be presumed that counsel representing the city were directed by the city council to proceed with the matter of condemnation in the absence of proof to the contrary, as authority of counsel to appear for a party and to institute suit will be presumed in the absence of contrary proof.

8. SAME—*necessity for condemnation rests in discretion of corporation, subject to judicial review.* The necessity for the exercise of the power of eminent domain is largely for the determination of the corporation, subject to judicial review and revision on abuse of the right; and where the court finds that the use for which property is to be taken is a public one, it will not inquire into the amount of property necessary for such use unless it appears that the quantity taken is grossly in excess of the amount necessary.

9. SAME—*when city may condemn property for cemetery purposes.* The necessity for the taking of property by a city for cemetery purposes is not one into which courts will inquire in the absence of an abuse of the right, and there is no abuse of such power where the record shows that the petitioning city has 1800 inhabitants and that its present cemeteries contain but four unsold lots.

10. SAME—*when property is sufficiently described in a petition.* Property to be taken is sufficiently described in a petition by a city for condemnation for cemetery purposes where it is described by metes and bounds, so that it can be readily located by any person familiar with the locality and so that a surveyor would have no difficulty in locating it.

APPEAL from the County Court of Scott county; the Hon. J. M. RIGGS, Judge, presiding.

WILLIAMS & WILLIAMS, and T. J. PRIEST, for appellant.

JOHN A. McKEENE, for appellee.

312—35

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee filed in the county court of Scott county a petition under the Eminent Domain act, seeking to condemn for cemetery purposes a parcel of land containing 11.57 acres belonging to appellant. This tract lies in the northwest corner of appellant's farm. A cemetery joins this tract on the west. An east and west public highway bounds it on the north. The east city limits of the city of Winchester extend through the western portion of this tract of ground and likewise the western portion of appellant's farm. A branch or ravine runs through the piece of land sought to be taken, practically the full distance from the southern to the northern boundary, leaving about one-third of the tract on the west side of the branch. This land is within about five blocks of the business section of the city of Winchester. Appellant's farm is improved by a residence, barns and outbuildings located about 700 feet south of the public highway and 400 feet east of the east line of the tract sought to be taken.

Appellant filed a motion to dismiss the petition on the ground, first, that it does not show that the city council of Winchester authorized, by resolution or otherwise, the commencement of this suit or proceeding; and second, that it failed to show that the city council determined the necessity of acquiring the land described in the petition for cemetery purposes. This motion was overruled and a jury was empaneled to try the issues as to the value of the property taken. At the close of the petitioner's evidence the motion to dismiss the petition was renewed on the grounds first stated, and on the additional ground that there was a variance in the description of the land sought to be taken as shown in the petition and as appearing in the evidence. Further, that petitioner made no proof of damages to land not taken; also that it failed to prove an attempt to agree with appellant on the matter of compensation before filing the petition. This motion was likewise overruled. Appel-

lant thereupon introduced testimony concerning the value of land taken and damages to land not taken. In the course of presenting appellant's case his counsel requested the court to determine the admissibility of evidence on the question of damages to land not taken by reason of the location of the cemetery near the dwelling house. This matter was argued before the court in the absence of the jury, and the court held such evidence not admissible. At the close of the evidence the jury viewed the land, and after being instructed, returned a verdict for $2314 for land taken and $700 damages to land not taken.

Appellant seeks reversal of the judgment entered on the verdict on four grounds: First, that the amount allowed as compensation for land taken and as damages to land not taken is inadequate; second, the court erred in refusing to dismiss the petition for the reasons assigned in appellant's motion; third, the court erred in refusing to permit appellant to prove that the fair cash market value of his land was depreciated by reason of locating a cemetery within 400 feet of his dwelling house; fourth, errors in the instructions.

Concerning the first point, appellant urges that by far the greater weight of the evidence showed that the value of the land taken was greatly in excess of $200 per acre, the amount awarded by the jury. A review of the evidence shows that some of petitioner's witnesses placed the value of the land as low as $150 per acre at the time of the filing of the petition, which was on June 27, 1923, but that the majority of them placed the value of the land at $200 per acre, the amount awarded by the jury. The petitioner examined nine witnesses on the question of the value of the land taken. Appellant testified that his business is raising and feeding cattle and hogs for the market; that there is an ever-living spring on the tract sought to be taken which is of great value to him in his business of feeding livestock, and that he would be put to a great expense in making additional fences and in providing water, caused by the loss

of the use of this spring, if it should be diverted. His witnesses placed the value of the land between $250 and $500 per acre, and the damages to land not taken was variously estimated from $5 to $15 per acre. Appellant offered fourteen witnesses on the value of the land taken and damage to the land not taken. Petitioner offered in rebuttal a number of witnesses who testified that the damage to land not taken was very slight, if any. Practically all of appellant's witnesses included in their consideration of the value of the land taken and damages to that not taken the existence of an ever-living spring. The existence of this spring was controverted by the petitioner. It called four witnesses who testified, in effect, that there was no such spring, although there was a branch of water there. Three witnesses on the part of appellant testified to the existence of the spring.

The rule is that this court will not interfere with the finding of a jury on the question of damages in a case of this character unless that finding is clearly and palpably against the weight of the evidence. The jury had the benefit of seeing the witnesses and hearing them testify, and the further benefit of a personal view of the premises in determining the compensation to be awarded, and where their verdict is within the scope of the testimony it will not be disturbed unless clearly against the weight of the evidence. *Metropolitan West Side Elevated Railroad Co.* v. *Johnson,* 159 Ill. 434; *Hercules Iron Works* v. *Elgin, Joliet and Eastern Railway Co.* 141 id. 491; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider,* 127 id. 144; *First Nat. Bank* v. *Mansfield,* 48 id. 494.

There may also be considered in this connection appellant's third point,—that is, that he should have been permitted, in making proof of damages to land not taken, to introduce evidence of the damage arising out of the proximity of a cemetery to his residence. He contends that the location of a cemetery near to his farm residence contains, in itself, an element of damage to the land not taken

which should enter into the consideration of the compen-
sation to be allowed him for such damages, and bases his
contention on section 13 of article 2 of the constitution,
providing that "private property shall not be taken or dam-
aged for public use without just compensation." The con-
stitution of 1848 provided that private property should not
be taken nor applied to public use without compensation
being made to the owner, and under that constitutional
provision it was held in *Nevins* v. *City of Peoria,* 41 Ill.
502, where the city had constructed the grade of one of
its streets in such a manner as to flood the plaintiff's prem-
ises in times of rain, that although there was no actual
appropriation of the plaintiff's premises by the defendant,
yet the grading of the street caused a direct physical in-
jury to his property and was within the relief provided
by the constitution. The same was held in *Gillham* v.
*Madison County Railroad Co.* 49 Ill. 484, *City of Aurora*
v. *Gillett,* 56 id. 132, *City of Jacksonville* v. *Lambert,* 62 id.
519, and *Toledo, Wabash and Western Railway Co.* v. *Mor-
rison,* 71 id. 616. By these cases and others holding the
rule, the doctrine became settled in this court that under
the constitution of 1848 actual physical injury to private
property by reason of the erection, construction or operation
of a public improvement, whereby the appropriate use and
enjoyment of such property was materially interrupted or
its value substantially impaired, was regarded as the taking
of such private property, within the meaning of the consti-
tution, to the extent of the damages thereby occasioned. By
this construction, actual physical invasion of the property
affected became the test. There were, however, numerous
injuries and damages arising, not through actual physical
injury to the property but to the use and enjoyment of it,
which were not included within the scope of the constitution
of 1848. It was evidently the intention of the framers of
the constitution of 1870 to give greater security to private
rights by affording relief in such cases of hardship by add-

ing to the constitutional provision the words "or damaged," so that it now reads, "private property shall not be taken or damaged for public use without just compensation."

The question of the significance of the words "or damaged" was raised and fully discussed in *Rigney* v. *City of Chicago,* 102 Ill. 64, where it was held that the purpose of the use of these words was to change the organic law of the State with reference to compensation for injury to private property and to declare a new rule, from which might spring new rights which did not exist under the constitution of 1848; that under the present constitution it is sufficient if there is a direct physical obstruction of or injury to the right of user or enjoyment by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which by the common law would, in the absence of any constitutional or statutory provision, give a right of action. "Property" is there defined as "that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects, and, generally, to the exclusion of all others." It was there held that the constitution of 1870 enlarged the right of recovery by extending its provisions to a class of cases not provided for under the old constitution. Concerning what cases fell within the new class provided for by the present constitution it was said: "While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not. intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is

clearly a case of *damnum absque injuria*.  So as to an obstruction in a public street.  If it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie.  In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally."

In *Chicago and Western Indiana Railroad Co.* v. *Ayres,* 106 Ill. 511, this court re-affirmed the doctrine laid down in the *Rigney case* as consonant with the weight of authority both in this country and in England.

The question as to what damages are to be embraced within this construction of the constitution was presented to this court in *Frazer* v. *City of Chicago,* 186 Ill. 480.  In that case suit was brought against the city of Chicago to recover damages to private property caused by the erection and maintenance of a small-pox hospital on property belonging to the city and situated across the street from the property of the plaintiff.  It was there held that the power to establish such a hospital was within the police power of the city, and that in the absence of carelessness or negligence or abuse of that power the hospital could not be considered a public nuisance, and that it could not be considered a private nuisance unless it became so by reason of its subsequent unwarranted use or operation.  The building of such a hospital was in that case held to be an exception to the provision of the constitution providing compensation for damages to private property.  It was there urged that while the city was within its rights, yet the rights of the plaintiff were damaged by reason of the exercise of such rights on the part of the city, and that the guaranty of the constitution against damage to private property for public use with-

out compensation applied. It was, however, held that such supposed damages must be considered as *damnum absque injuria,* on the theory of the law that the plaintiff is compensated for the injury sustained by sharing the general benefits which are secured to all by it, and that in principle no difference obtained between the right of the city to establish and maintain a small-pox hospital and to erect and use a jail, calaboose, fire engine houses, and the like.

The provision of the constitution that private property shall not be damaged for public use was not intended to reach every possible injury that may be occasioned by a public improvement. If an obstruction or improvement does not practically affect the enjoyment or use of property not taken, and thereby impair its value, no action will lie. To sustain an action for such damages the damage must be to property and not a mere personal inconvenience or injury, such as damage to trade or business. If the injury amounts only to an inconvenience or discomfort to the occupants of the property but does not affect the value of the property, it is not within the provision of the constitution even though a personal action would lie therefor. The injury complained of must also be actual, susceptible of proof and capable of being approximately measured, and must not be speculative, remote, prospective or contingent. To warrant a recovery the damage must be different in kind from that sustained by the people of the whole neighborhood. If it differs only in degree from that suffered in common by the people of the neighborhood the injury is not within the provision of the constitution. *Illinois Central Railroad Co.* v. *Trustees of Schools,* 212 Ill. 406; *Hohmann* v. *City of Chicago,* 140 id. 226.

In *Aldrich* v. *Metropolitan West Side Elevated Railroad Co.* 195 Ill. 456, it was held that there could be no recovery for the usual noise and vibration attendant upon the operation of a railroad. That case distinguishes other cases decided by this court, such as *Chicago, Milwaukee and St. Paul*

*Railway Co.* v. *Darke,* 148 Ill. 226, and *Chicago, Peoria and St. Louis Railway Co.* v. *Leah,* 152 id. 249, the first of which was an action for cinders, ashes and smoke thrown upon the plaintiff's premises, and the second for closing the approach to the premises. Counsel for appellant have cited cases of other jurisdictions holding a different view as to compensation for the erection of pesthouses and the like, but the rule is well settled in this State as here stated.

We come, then, to a consideration of the question whether the existence of a cemetery near the dwelling house of the appellant and adjacent to his property is a damage to his property within the meaning of the constitution. The right to damages, as we have seen, must be based on the ground that a right of property has been disturbed, and can not be awarded for an injury to the convenience or feelings of the owner. Likewise the damages must be susceptible of proof. Applying these tests, we are of the opinion that it cannot be said that the damage for which appellant seeks compensation is such as arises out of the disturbance of a property right, nor is it a damage subject to proof or measurement. It is one which affects the feelings of the individual owner, only, and varies with the sentiments of each particular individual. It is, furthermore, not different from that sustained by others residing in that neighborhood though it may be of a greater degree. We are of the opinion, therefore, that the location of this cemetery is not an injury embraced within the constitutional provision for damage to property not taken, and the trial court did not err in refusing to admit evidence concerning such damage.

Appellant's second contention is, that the court should have dismissed the petition for the reasons assigned in his motion. Those reasons were, as set forth in the first motion to dismiss the petition, that the petition does not show that the city council authorized the commencement of the suit, determined the necessity for the condemnation of appellant's land or the amount of land necessary. The motion

was renewed at the close of the plaintiff's case and at the close of all the evidence, with the additional ground that neither the petition nor the evidence disclosed authority for filing the petition, or the necessity for the proceedings, or amount of land necessary. The petition sets forth, by reference to the statute, the authority vested in the city of Winchester to proceed in eminent domain. It also sets out that the present cemetery facilities have become exhausted and great embarrassment has arisen in attempts to secure suitable burial spots for deceased persons; that it is necessary to take and acquire a certain parcel of land, which the petition then proceeds to describe. The petition also avers an effort on the part of the petitioner to agree with the owner of the land, the appellant, pertaining to compensation, but that it has been unable so to do. Section 1 of article 5 of the Cities and Villages act authorizes cities to establish and control cemeteries. Section 2 of the Eminent Domain act describes what the petition shall contain. That section requires that the petition for condemnation set forth "by reference" the authority of the petitioner in the premises. This language has been construed by this court to refer not to the resolutions of the corporate authorities, but to the authority vested by law in the corporation seeking condemnation under the exercise of the power of eminent domain, and that a petition in condemnation complies with the direction of the statute if it refers to the act of the legislature granting the power. The authority is sufficiently set out in the petition. *City of Mound City* v. *Mason, 262 Ill.* 392; *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore and Ohio and Chicago Railroad Co.* 149 id. 272.

Appellant contends that though it be held that the city has authority, yet the record must show the necessary steps taken to exercise that authority, and that even though the petition be held sufficient, since there was no proof of a resolution by the city council authorizing the commencement of the suit the petition should be dismissed. We do not

agree with this view. We have seen that the petition need not recite authority of the city council in such proceeding. If the city has the right to file a petition, direction to counsel representing the city will, in the absence of statutory requirements or proofs to the contrary, be presumed. We are cited to no contrary statute or proof in this record. The authority of counsel to appear for a party and to institute suit will be presumed, in the absence of proof to the contrary. *People* v. *Parker,* 231 Ill. 478; *Ferris* v. *Commercial Nat. Bank,* 158 id. 237; *People* v. *Supervisor,* 100 id. 332; *Williams* v. *Butler,* 35 id. 544.

The question as to the necessity for the taking of this property for cemetery purposes is not one into which courts will inquire where the power to condemn property exists, in the absence of an abuse of the right. The question of the necessity for the land to be taken is left largely to the determination of the corporation, subject to judicial review and revision on abuse of the right, and where the court finds that the use for which the property is to be taken is a public one, it will not inquire into the amount of property necessary for such use, unless it appears that the quantity of property taken is grossly in excess of the amount necessary. (*Village of Depue* v. *Banschbach,* 273 Ill. 574; *City of Chicago* v. *Lehmann,* 262 id. 468; *County of Mercer* v. *Wolff,* 237 id. 74; *Smith* v. *Drainage District,* 229 id. 155; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511.) There is no evidence of abuse of the power of eminent domain in this case. The record shows that the city of Winchester contains a population of something over 1800. The present cemeteries contain but four lots for sale, and these, the record shows, are by no means desirable.

It is also contended that there is a variance between the petition and the proof as to the description of the property taken. The record does not bear out this contention. The property is described by metes and bounds and will be readily located by any person familiar with the locality, and it

appears that a surveyor would have no difficulty whatever, from this description, in locating it. That is all that is required. *Smith* v. *Drainage District, supra; Village of Byron* v. *Blount,* 97 Ill. 62.

Appellant also contends that it was error to give the 9th, 10th, 12th, 18th and 19th instructions on behalf of the petitioner. As these instructions relate to the proximity of a cemetery as an element of damage to property not taken it is not necessary to discuss them. It is not contended that they do not correctly present the law under the views here expressed concerning that question.

There is no reversible error in the record and the judgment will be affirmed.